[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This lawsuit first came to this Court by writ, summons and complaint dated June 16, 1997 and returnable July 8, 1997, claiming a dissolution of marriage, custody and support of minor child, alimony, an allowance to prosecute, exclusive use and possession of the family residence and other financial and/or equitable relief
Certain motions accompanied the complaint, as well as a financial affidavit.
The Defendant appeared by counsel and filed an answer and cross complaint on June 27, 1997 in which cross complaint the Defendant claimed a dissolution of marriage, joint custody of the minor child, a fair and equitable property settlement and such other relief, legal or equitable, as seems appropriate.
On July 21, 1997 a stipulation according the Plaintiff use and possession of 37 Wildwood Lane, Uncasville and enjoining disposal of assets was filed and approved by the Court, Booth, J.
On September 19, 1997 the matter was claimed for the Family Relations list.
On October 22, 1997 the parties entered into a stipulation wherein the Plaintiff would have temporary custody of the minor child, receive $215.00 per week unallocated child support and alimony and the Defendant would be required to provide health insurance for the Plaintiff and the minor child.
On August 11, 1998 new counsel appeared for the Defendant. CT Page 13024
On September 2, 1998, the Court, Solomon, J., appointed a guardian ad litem for the minor child in the person of Attorney Susan Connolly.
The matter came on for a hearing by the Court on September 23, 1998 and continued on September 24, 1998, at which time the parties appeared with counsel and the attorney for the minor child appeared and were heard by the Court.
The Court makes the following findings of fact.
The Plaintiff at time of trial testified that she was on medication, paxel, taken twice a day for anxiety and depression.
The Plaintiff appeared to be in full possession of her faculties at time of trial.
The Plaintiff and the Defendant were married on June 5, 1982 at Saint John's Church in Uncasville.
Both of the parties have resided in Connecticut for more than one year prior to the bringing of the present petition.
There is one minor child issue of the marriage, Meghan Rose Duthrie, born September 11, 1985. Neither of the parties are the recipients of State welfare.
Neither of the parties are presently in the military service of the United States.
The marriage of the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
The Plaintiff has experienced panic attacks which first started about 18 months ago when the Defendant told her he was leaving and had been having an affair.
In 1987 it was determined that the Plaintiff had a brain tumor and underwent an operation for the same, which resulted in brain damage relative to short and long-term memory loss.
In addition, the Plaintiff's left side nervous system was affected and her speech became slurred.
The Plaintiff and Defendant separated on May 26, 1997. CT Page 13025
The Plaintiff is age 39, grew up in Uncasville and has two sisters and two brothers.
Plaintiff attended Saint Bernard's School.
After graduation Plaintiff was trained as a dental assistant and was employed in Groton by Dr. Ruff and in Gales Ferry by Dr. Schiller.
Plaintiff and Defendant had dated for two years prior to the marriage.
The Defendant attended Dean Junior College for two years in Massachusetts
In the early years of the marriage the Defendant was employed by Pepsi Cola and later United Nuclear Corp.
The first few years of the marriage went well.
As time went by the Defendant would be away for long intervals involved with outdoor activities and hunting.
When the Defendant first left the home, May 26, 1997, he went to reside with his parents.
While the Defendant was away, the Plaintiff became involved with a friend.
When the child, Meghan, was three years old the Defendant was away from the home for six months.
Prior to the May 26, 1997 separation, the Defendant had left the home on three separate occasions for substantial periods of time.
The Defendant told the Plaintiff he was not happy being married.
The Plaintiff had continued working after the marriage and continued to do so until the brain tumor was diagnosed.
After her operation at Yale New Haven, where she was in the hospital for six weeks, she required physical therapy at home for CT Page 13026 one month.
After the operation, the Plaintiff forced herself to pursue a plan of physical improvement and has done extremely well, all things considered.
The Plaintiff was unable to return to her former employment as dental assistant because her hands were unsteady due to the brain operation.
Due to the effects of radiation at the time of the operation, the Plaintiff lost her hair and is obliged to wear a wig.
The Plaintiff is able to engage in some activities and bowls in a league with other people
In 1994 the parties bought a home in Uncasville, a three bedroom ranch style, 1-1/2 baths and attached garage situated on a 1/2 acre lot.
Since 1995 the Defendant has been employed by the State of Connecticut as a corrections officer.
In addition to his position with Corrections, the Defendant has had part-time employment with Lawrence and Memorial Hospital in security work and as a helper in landscaping work.
The Defendant has told the Plaintiff he got married too young and didn't experience life enough prior to marriage.
The parties have entered into a parenting plan with the help and assistance of the attorney for the minor child.
The parenting plan is set forth herein, see attached plan dated September 23, 1998. The Plaintiff receives Social Security Disability payments for herself and the minor child. The Social Security payments to the Plaintiff are $175.00 weekly and for the minor child $90.00 weekly. See Plaintiff's Exhibit 2.
The Plaintiff presently has a position as a part-time school monitor for the Montville Board of Education, wherein she earns $90.00 weekly gross, $65.00 net.
The Plaintiff puts in 15 to 18 hours every two weeks incident to her duties as monitor. CT Page 13027
There are periodic reviews of the Plaintiff's Social Security eligibility.
The real estate formerly owned by the parties was situated at 37 Wildwood Lane, Uncasville and was valued by the Defendant at $119,000.00 with a mortgage of $117,000.00.
The monthly mortgage payment was $990.00, which had included taxes and insurance.
During the marriage the Defendant spent considerable funds on hunting equipment and firearms.
The Defendant recently filed for bankruptcy and the home was foreclosed and lost.
The Plaintiff joined in the bankruptcy petition.
The Plaintiff retained her automobile from the bankruptcy proceedings and pays $180.00 monthly on the car loan, the vehicle is a 1994 Toyota. Real property formerly owned by the parties in Montana was sold for $6,000.00 and the proceeds apportioned equally between the parties.
The Defendant has been paying the Plaintiff $215.00 weekly since October 1997.
The Plaintiff's admitted affair lasted four months and took place while the Defendant was away on an extended absence from the home.
The Plaintiff is able to drive an automobile that has a standard transmission.
The Plaintiff was unable to maintain the parties' Wildwood Lane property after the Defendant moved out and as indicated it went to foreclosure.
The Plaintiff now pays $670.00 monthly for a two bedroom apartment.
On occasion the Plaintiff has visited one of the area's casinos with her daughter, and last summer spent $500.00 on a vacation in Iowa with her daughter. CT Page 13028
The monies came from an IRS refund.
The parties did earlier engage in counseling with Dr. George Gordon but it did not preserve the marriage.
The Social Security Administration made it possible for the Plaintiff to attend Three Rivers College for training.
Social Security indicated to the Plaintiff she was not employable.
The Defendant has a friend who is a co-worker at his employment. Defendant earlier had another friend. The Defendant is now on the first shift with the Department of Corrections, his hourly rate is $17.00+ and he works 36-1/4 hours a week, he also receives a meal allowance.
The Defendant is age 38, enjoys good health and is a non-smoker.
At the conclusion of the Plaintiff's case and when the Plaintiff had rested, the Defendant offered no testimony by way of a defense.
The Plaintiff in her case-in-chief had admittedly called the Defendant as a I witness.
From the exhibits the Court finds:
The Defendant's weekly gross income from the Department of Corrections is $756.12 and the net is $487.95. See Plaintiff's Exhibit 4.
Having gone through bankruptcy, the Defendant has only several nominal debts of approximately $3,663.00, see Plaintiff's Exhibit 4.
Defendant's financial affidavit reflects firearms valued at $4,800.00, a Paine Webber IRA valued at $2,981.00 and invested pension benefits of $4,070.00, see Plaintiff's Exhibit 4.
The Plaintiff has debts amounting to $2,200.00 incurred since bankruptcy and her only asset is her 1994 Toyota with an equity of $7,400.00, see Plaintiff's Exhibit 2. CT Page 13029
According to the health form, the Plaintiff's education extended through two years of college.
The Defendant's education extended through one year of college.
This union is the first marriage for both parties.
The 1997 federal income tax return of the parties reflects the following:
Defendant's earnings from Corrections — $32,943.54
Plaintiff's earnings from Montville Board of Education — $4,021.43
Plaintiff's receipt of $9,191.20 from Social Security.
Plaintiff's receipt of $4,596.00 on behalf of the minor child Meghan from Social Security
Defendant's earnings of $4,594.20 from Lawrence Memorial Hospital, see Defendant's exhibit 5 for the above.
In 1997 the Defendant also earned $620.00 working for A-1 Lawncare and Maintenance.
See Plaintiff's Exhibit 13.
 Discussion
This is a marriage of 16 years duration with one child issue of the union who is now age 13.
The Plaintiff, by virtue of the brain tumor and the subsequent operation, has marked disability which is unlikely to improve.
Both of the parties have acknowledged relationships with others outside the marriage.
The Defendant has on numerous occasions absented himself from the home. CT Page 13030
It appears that the parties have drifted apart as the years went by.
The affliction visited on the Plaintiff has undoubtedly put stresses and strains on the marital union.
The family home has been lost and bankruptcy resorted to by the parties.
 The Law
The Court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-56 et seq., regarding custody and visitation, C.G.S. § 46b-62 regarding attorney's fees, C.G.S. § 46b-81 regarding property distribution, C.G.S. § 46b-82 regarding alimony, C.G.S. § 46b-84 regarding child support. The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties and all exhibits and the arguments of counsel.
Based on the testimony at trial, the recommendations of the attorney for the minor child and the foregoing findings of fact, the Court enters the following orders.
Custody
The Court accepts and approves the Parenting Plan dated September 23, 1998, which plan has been signed and approved by both parties and recommended by the attorney for the minor child.
See separate attached schedule.
The parties shall share joint legal custody of the minor child Meghan with primary residence being with the Plaintiff wife.
The Defendant shall maintain health insurance coverage for Meghan and pay for one-half of all of Meghan's unreimbursed health expenses.
Payment to be made within 60 days of receiving notice of any such expense. CT Page 13031
The Plan is set forth herein with accompanying calendar schedule through March 1999.
Support for the minor child in the amount of $125.00 per week.
The Defendant father shall be entitled to the exemption for the minor child as long as he is current in the support payments.
Alimony in the amount of $80.00 weekly is awarded to the Plaintiff wife for a period of ten years.
Said order shall be non-modifiable as to term.
Alimony to terminate earlier on the Plaintiff's death, remarriage or cohabitation with an unrelated male.
Payments to be taxable to the Plaintiff and deductible to the Defendant.
In addition to the provisions contained in the Parenting Plan, contingent upon his ability to pass any required physical exam, the Defendant shall maintain life insurance in the amount of $50,000.00 naming the minor child as irrevocable beneficiary until the child reaches age 19 or graduates from high school whichever shall first occur.
This obligation shall be contingent on the Defendant's ability to procure the insurance for a premium not to exceed $250.00 per year.
Contingent upon his ability to pass any required physical exam the Defendant shall procure a life insurance policy naming the Plaintiff irrevocable beneficiary in the amount of $50,000.00 until her death, remarriage, or the term of the alimony for a premium not to exceed $250.00 per year.
The Defendant shall provide the Plaintiff with copies of the foregoing policies when secured and provide annual verification of their being in full force and effect.
The Defendant shall retain his State of Connecticut Pension Plan. CT Page 13032
The Plaintiff shall receive all of the Defendant's IRA Paine Webber account shown on Defendant's financial affidavit and one-half of the Deferred Comp. Phoenix Account by rollover or Qualified Domestic Relations Order.
The Defendant shall maintain Cobra health insurance benefits for the benefit of the Plaintiff through his employment with the State for a period of three years or her earlier remarriage or death.
The Defendant shall retain his 1996 Chevrolet automobile and hold the Plaintiff harmless as concerns any lien or loan thereon.
The Plaintiff shall retain her 1994 Toyota and save the Defendant harmless as concerns any lien or loan thereon.
The Defendant shall pay the sum of $1,000.00 toward the Plaintiff's attorney's fees, payment to be made within six months.
The Court has taken into account the generous visitation schedule accorded to the Defendant in arriving at the present orders.
Each party will sign such documents as may be necessary to implement the orders of the Court.
The Defendant may retain his firearms.
A wage execution may issue.
The parties shall share equally the fee due the attorney for the minor child, the same to be paid within 90 days.
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single end unmarried (C.G.S. § 46b-40c).
Austin, JTR